IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DONNA K. LONG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-05-957-M |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff filed her application for benefits on April 29, 2003 (protective filing date), alleging that she became disabled on July 1, 2000. (TR 45-47, 90). She alleged disability due to anxiety, depression, and pain in her back, knees, legs, shoulder, and hand. (TR 57, 67). Plaintiff stated that she had three years of college education and vocational training as a magnetic resonance imaging ("MRI") technician and x-ray technician. (TR 73). Plaintiff's application was administratively denied. (TR 28, 29). At Plaintiff's request, a hearing *de novo* was conducted at which Plaintiff and a vocational expert ("VE") testified. (TR 219-248).

At this hearing, Plaintiff testified that she was 48 years old, that she had not worked since July 2000, and that her knees were damaged in a car accident and became progressively worse until she underwent knee replacement surgery in February 2002. Plaintiff testified that when she stopped working in July 2000 she was using a walker to assist her with walking because of pain in her knees. (TR 226). Plaintiff also described dermatitis caused by steroid medication injections into her knees. (TR 226-227). Plaintiff testified that the rash caused her to avoid people and going out in public. (TR 227-228).

Plaintiff stated that she was depressed and had tried to commit suicide. However, when questioned about the date of her last attempt at suicide, she stated it was in 1985. (TR 235). Plaintiff described an 80-pound weight gain over the years since her "knees got hurt." (TR 237). The remainder of Plaintiff's testimony was related to her activities and functional limitations at the time of the hearing and therefore this testimony was not relevant to the issues before the ALJ in light of the December 2000 expiration of Plaintiff's insured status.

The VE testified concerning the exertional and skill requirements of Plaintiff's previous work as a radiologic technician, MRI technician, and respiratory therapy aide. (TR 242). The VE classified these previous jobs as involving medium, skilled or semiskilled work, with transferable skills of assisting others, communicating with others, keeping forms and records, and keyboard operations. (TR 242). The ALJ posed a hypothetical inquiry to the VE of an individual with three years of college education, the same age and previous work as the Plaintiff, the ability to perform sedentary work, and the same skills as Plaintiff. (TR 242). The VE testified that this individual could perform the sedentary, semiskilled jobs of telephone solicitor, answering service operator, compiler, and the unskilled job of order clerk.[1] (TR 242-244).

Following the hearing, the ALJ issued a decision (TR 17-24) in which the ALJ found that Plaintiff has severe impairments due to osteoarthrosis, anxiety, and depression. Despite these severe impairments, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform light work. Based on this RFC and relying on the VE's testimony, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act because she has the ability to perform the jobs of telephone solicitor, answering service operator, compiler, and order clerk.

Plaintiff's request for review of the ALJ's decision by the Appeals Council was

---

[1] The VE also testified concerning the DOT numbers for these jobs and the numbers of these jobs that are available in the economy.

denied. (TR 5-7). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this Complaint is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). The court will look to the record as a whole to determine whether the evidence which supports the Commissioner's decision is substantial in light of any contradicting evidence. Nieto v. Heckler, 750 F.2d 59, 61 (10th Cir. 1984); Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)(*per curiam*). If the Commissioner fails to apply the correct legal standard or substantial evidence does not support the Commissioner's decision, the court may reverse the Commissioner's findings. Byron v. Heckler, 742 F.2d 1232, 1235 (10th Cir. 1984)(*per curiam)*. The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). To find that the Commissioner's decision is supported by substantial evidence in the record, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion. Bernal v. Bowen, 851 F.2d 297, 299 (10th Cir. 1988).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. §416(i). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. <u>See</u> 20 C.F.R. §404.1520(b)-(f) (2005); <u>see</u> <u>also</u> <u>Williams v. Bowen</u>, 844 F.2d 748, 750-752 (10th Cir. 1988)(describing five steps in detail). The claimant bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. §404.1512 (2005); <u>Turner v. Heckler</u>, 754 F.2d 326, 328 (10th Cir. 1985). Where the plaintiff makes a *prima facie* showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show "the claimant retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." <u>Turner v. Heckler</u>, 754 F.2d at 328; <u>Channel v. Heckler</u>, 747 F.2d 577, 579 (10th Cir. 1984).

III. <u>RFC for Work</u>

Plaintiff raises three issues in support of her appeal of the Commissioner's final decision. Plaintiff first contends that the ALJ erred in formulating her RFC because the ALJ failed to include all of her physical limitations. Secondly, Plaintiff contends that the ALJ erred by failing to fully develop the record. Finally, Plaintiff contends that the ALJ failed to describe what exertional and/or nonexertional limitations affected her ability to work. The Commissioner responds that no error occurred with respect to the ALJ's decision and that there is substantial evidence in the record to support the ALJ's decision.

At the fourth step of the evaluation process required of administrative factfinders, the ALJ recognized that he was required to determine whether the Plaintiff retains the RFC to perform the requirements of her past relevant work or other work that exists in significant

numbers in the economy. At step four, the claimant bears the burden of proving her inability to perform the duties of her past relevant work. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1051 (10th Cir. 1993). At this step, the ALJ must "make findings regarding 1) the individual's [RFC], 2) the physical and mental demands of prior jobs or occupations, and 3) the ability of the individual to return to the past occupation, given his or her [RFC]." Henrie v. United States Dep't of Health & Human Servs., 13 F.3d 359, 361 (10th Cir. 1993). The assessment of a claimant's RFC necessarily requires a determination by the ALJ of the credibility of the claimant's subjective statements. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)(footnote omitted).

Plaintiff contends that the ALJ erred at the fourth step of the requisite sequential evaluation procedure by "fail[ing] to properly weigh the opinions of claimant's treating physicians, examining physicians, consultative physicians, and claimant's own subjective complaints" and "fail[ing] to accurately report the evidence as contained in the record thus compromising the analysis of claimant's abilities and limitations." Plaintiff's Brief, at 7. With respect to the allegation of error in considering treating physician's opinions, Plaintiff refers only to a medical report of MRI testing of Plaintiff's back conducted in June 2003.

Plaintiff contends that the ALJ misinterpreted or misread the record concerning this report and thus "failed to account for all of claimant's conditions in developing the RFC." Plaintiff's Brief, at 7.

Plaintiff's insured status for Title II disability insurance benefits expired on December 31, 2000. (TR 51, 90). Consequently, to be entitled to receive disability insurance benefits, Plaintiff must show that she was "actually disabled [within the meaning of the Social Security Act] prior to the expiration of his insured status" on December 31, 2000. Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1349 (10th Cir. 1990)(*per curiam*); accord, Adams v. Chater, 93 F.2d 712, 714 (10th Cir. 1996); Henrie, 13 F.3d at 360. "[T]he issue is the existence of a disability at a particular time and not the identification of a cause." Flint v. Sullivan, 951 F.2d 264, 268 (10th Cir. 1991). In other words, if there is medical evidence of a degenerative or ongoing impairment, "[t]he relevant inquiry ... is whether the claimant was actually disabled during the relevant time, not whether a disease existed that ultimately progressed to a disabling condition." Stonebraker v. Shalala, 827 F.Supp. 1531, 1536 (D.Kan. 1993).

The only evidence relevant to Plaintiff's claim relates to her mental and physical impairments between her alleged onset date of July 1, 2000, and the expiration of her insured status on December 31, 2000. The record contains only brief records of conservative treatment of Plaintiff in 1998 and 1999 for elbow, right hip, and right knee pain by Dr. Charles Bryant. (TR 102-106). The ALJ summarized these records in his decision. (TR 20). Even if the ALJ misinterpreted a record of MRI testing of Plaintiff's back conducted in June

2003, Plaintiff does not suggest that this MRI test provided evidence of a back impairment existing on or before the expiration of Plaintiff's insured status. Thus, the ALJ did not err in failing to consider the MRI test in formulating Plaintiff's RFC for work during the relevant time period.

Plaintiff contends that in light of the 2003 MRI testing results the ALJ "should have further developed the record to determine the onset date of her such conditions." Plaintiff's Brief, at 8-9. Plaintiff is asserting that the ALJ failed to obtain a retrospective medical opinion and that this omission breached his duty to develop the record. The Commissioner "has broad latitude in ordering consultative examinations;" however, "where there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim." Hawkins v. Chater, 113 F.3d 1162, 1166 (10th Cir. 1997)(citations omitted).

Plaintiff does not allege that she was unable to provide medical records concerning her alleged back impairment, and her attorney indicated at the hearing that the medical record was complete. (TR 221). The record does not contain evidence that Plaintiff was significantly impaired by a back condition at the time her insured status expired. Although in July 1999 Plaintiff's treating physician recommended MRI testing of her lumbar spine (TR 102), there is no record of any MRI testing of Plaintiff's back until June 2003, over two years after her insured status expired. Moreover, Plaintiff was represented by counsel at the administrative hearing, and Plaintiff testified that she was limited only by knee pain and a

rash caused by steroid injections during the relevant time period in 2000. Although Plaintiff testified that at the time of the hearing she was experiencing back and shoulder pain that she treated with heat ointment, an ice pack, and over-the-counter pain medications, Plaintiff did not relate this pain to the relevant period before her insured status expired. Accordingly, the ALJ did not err in fulfilling his duty to develop the record with respect to an alleged back impairment. See id. at 1167 ("Isolated and unsupported comments by the claimant are insufficient, by themselves, to raise the suspicion of the existence of a nonexertional impairment," "the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists," and "in a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.").

Plaintiff also refers to the ALJ's reliance on VE testimony rather than the agency's Medical-Vocational Guidelines in determining at step five that Plaintiff was not disabled. Plaintiff contends that the ALJ failed to describe the specific exertional and nonexertional limitations which the ALJ found affected her ability to work. The ALJ determined that during the relevant time period between July and December 31, 2000, Plaintiff had the RFC to perform a significant range of light work, and this finding necessarily includes the finding that Plaintiff was capable of performing sedentary work. See 20 C.F.R. § 404.1567 (2005)(describing light and sedentary work classifications); SSR 83-10 ("RFC generally represents an exertional work capability for all work at any functional level(s) below that" exertional level found by the ALJ).

At the fifth step of the requisite sequential evaluation procedure, the burden of proof shifts to the Commissioner, and the claimant is entitled to benefits if the Commissioner cannot establish that the claimant retains the capacity to perform alternative work which exists in the national economy. See Williams, 844 F.2d at 751 (describing fifth step). In order to satisfy this burden, the Commissioner may rely on the Medical-Vocational Guidelines, commonly known as the grids, 20 C.F.R. pt. 404, subpt. P, app. 2 (2005), if the claimant's RFC allows him or her to perform substantially all of the requirements at a particular exertional level. However, "since nonexertional limitations are not factored into the grids but must be taken into account in determining a claimant's RFC, the grids cannot be applied conclusively if a clamant has nonexertional limitations that significantly limit his [or her] ability to perform the full range of work in a particular RFC category on a sustained basis." Id. at 752 (quotations and citations omitted). When a claimant has both exertional and nonexertional limitations affecting his or her ability to work, the grids may be used only as framework for decisionmaking. Id.

The ALJ's decision reflects his finding that Plaintiff has a severe impairment due to osteoarthrosis, and there is no dispute that this is a pain-causing impairment. The ALJ recognized this fact and considered Plaintiff's complaint of disabling pain under the pertinent standard. "Subjective complaints of pain must be evaluated in light of plaintiff's credibility and the medical evidence." Ellison v. Secretary of Health & Human Servs., 929 F.2d 534, 537 (10th Cir. 1990). In assessing the credibility of a subjective allegation of disabling pain, the ALJ must consider such factors as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991); see Luna v. Bowen, 834 F.2d 161, 165-166 (10th Cir. 1987).

The ALJ appropriately considered the Plaintiff's subjective statements concerning her pain and concluded that her allegation of disabling pain was not consistent with the objective medical evidence prior to December 31, 2000, or with Plaintiff's own statements. (TR 21). The ALJ provided reasons for this credibility determination (TR 21), and there is substantial evidence in the record to support this credibility finding. As the ALJ pointed out, Plaintiff asserted that she stopped working in July 2000. At her hearing, Plaintiff denied working "any at all since July of 2000." (TR 224-225). However, there is evidence in the record that Plaintiff continued to work after this date, including work in an auto repair business she owned.[2] (TR 113, 207).

The ALJ did not wholly reject Plaintiff's assertion that she experienced knee pain

---

[2] Public records available on the internet indicate Plaintiff was charged with Unfair or Deceptive Trade Practice in Violation of Oklahoma Consumer Protection Act after former conviction of a felony in May 2003 in the District Court of Cleveland County. <www.oscn.net> (docket sheet in State of Oklahoma v. Donna K. Long, Case No. CF-2003-590). This record indicates that Plaintiff was convicted of this charge in February 2005. The plea agreement entered in the record in this criminal matter indicates that as a part of Plaintiff's plea agreement she agreed not to "be in the auto repair business." Id.

11

during the relevant time period and found that Plaintiff's exertional and nonexertional impairments restricted her to work at the light and sedentary exertional levels. The ALJ noted that if Plaintiff was capable of performing the full range of light work, the grids would direct a finding that she was not disabled. (TR 22). However, the ALJ employed a VE to determine whether there were jobs available in the economy which an individual with Plaintiff's vocational characteristics and RFC for light work could perform. At the hearing, the ALJ elicited vocational testimony concerning the existence of sedentary jobs employing the skills that Plaintiff had gained in her previous work as well as the existence of unskilled, sedentary jobs. (TR 242-246). The ALJ relied on the VE's testimony concerning the availability of jobs for an individual with an RFC for sedentary work. Thus, although the ALJ found that Plaintiff was capable of performing a "significant range of light work" as defined by the agency's regulations (TR 22), the ALJ found that there were jobs available at the sedentary level which Plaintiff could perform and therefore she was not disabled within the meaning of the Social Security Act.

     The ALJ's decision reflects his finding that Plaintiff's pain due to arthritis in her knees was an additional nonexertional limitation that precluded conclusive reliance on the grids. This is not error. Despite the lack of objective evidence of medical treatment of Plaintiff for a pain-causing impairment between July 1999 and September 2001, the ALJ generously determined that Plaintiff's knee impairment did cause her some pain affecting her ability to work during that time period and limited her to the performance of jobs at the sedentary exertional level, even though the ALJ recognized that Plaintiff might have been capable of

performing a significant number of light jobs as well.  There is substantial evidence in the record to support this determination, and the Commissioner's decision should be affirmed.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's application for disability insurance benefits.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before ___June 6th___, 2006, in accordance with 28 U.S.C. §636 and LCvR 72.1.  The parties are further advised that failure to file a timely objection to this Report and Recommendation waives their respective right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656(10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this ___17th___ day of ___May___, 2006.

*[signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE